IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TORRI R. GULLEDGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:09cv1097-CSC |
| ) | (WO) |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.  Introduction**

The plaintiff applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., and disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

42 U.S.C. §§ 405 (g) and 1383(c)(3).

The parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)   Is the person presently unemployed?
> (2)   Is the person's impairment severe?
> (3)   Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)   Is the person unable to perform his or her former occupation?
> (5)   Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

2

answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).³

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

---

³ *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

### III. The Issues

**A. Introduction**. Plaintiff Torri Gulledge[4] ("Gulledge") was 48 years old at the time of the hearing before the ALJ. (R. 35). She has a high school education and three years of college. (R. 36). Her prior work experience includes work as a retail sales clerk, patients service manager, office manager, claims adjustor and billing manager. (R. 51). Following the hearing, the ALJ concluded that the plaintiff has a severe impairment of "degenerative disc disease." (R. 13). The ALJ concluded that Gulledge could not perform any of her past relevant work, (R. 16), but she had the residual functional capacity to perform sedentary work. (R. 14). Relying on the testimony of a vocational expert, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Gulledge could perform. (R. 17). Consequently, the ALJ concluded that she was not disabled. (*Id*.).

**B. The Plaintiff's Claim**. As stated by the plaintiff, the sole issue before the court is "[t]he Commissioner's decision should be reversed, because the ALJ failed to properly apply the two part pain standard." (Doc. # 11, Pl's Br. at 6). It is to this issue that the court now turns.

### IV. Discussion

Gulledge contends that the ALJ erred when he failed to properly credit her testimony regarding the severity of her pain. As explained below, the ALJ did not fully credit Gulledge's testimony. "Subjective pain testimony supported by objective medical evidence

---

[4] The plaintiff has used several names including Torri Regina Theis, Torri Regina McLaughlin, Torri R. Swinford, and Torri R. Gulledge. (R. 126, 133).

of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is *itself* sufficient to sustain a finding of disability." *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987). The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) an objectively determined medical condition of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553. In this circuit, the law is clear. The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553. Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law. This standard requires that the articulated reasons must be supported by substantial reasons. If there is no such support then the testimony must be accepted as true. *Hale*, 831 F.2d at 1012.

At the administrative hearing, the plaintiff testified that she is disabled due to her chronic pain in her back, hips, leg and right foot. (R. 43-44). She testified that she has had

three back surgeries, the last one in 2004. (R. 42-43). She uses a cane even though her doctor did not prescribe one for her. (R. 41). "The doctor told me that I could pick one up if necessary." (*Id*.) She further testified that she can do laundry and vacuum (R. 40), but it takes her three hours to recover from the physical exertion. (R. 46). She does grocery shopping with her husband. While she can, and does sometimes, drive, her husband usually does most of the driving. (R. 41).

After reciting Gulledge's testimony, and reviewing the medical evidence, the ALJ acknowledged that Gulledge has impairments that could reasonably be expected to produce the type of pain about which she complains but the ALJ then concluded that Gulledge's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 16).

If this were the extent of the ALJ's credibility analysis, the plaintiff might be entitled to some relief. However, the ALJ also discredited the plaintiff's testimony based on the following.

> The claimant alleges back pain which radiates into her hips, down her right leg, and into her right foot. She states that her sleep is interrupted because of her pain, and that she needs to be off her feet for up to three hours a day. She states that she can do no full-time work and lift nothing over two pounds. She states that she can only sit for one hour in a day, stand only two hours in a day, and walk, with a cane, only up to three blocks. She also states that her memory and concentration are poor and she is groggy when taking her pain medication. The claimant's husband testified that the claimant is fatigued and lies down during the day. He also stated that she can cry because of the intensity of her pain, and that she does not take her pain medication as she should.

The claimant has alleged extreme limitations resulting from her back pain, but I do not find persuasive support for such extreme limitations in her routine and conservative treatment record (Exhibits 8F, 9F, 10F, 11F, 12F). The claimant had back surgery in 1995 and in 2004, but she has required no emergency intervention or hospitalizations because of her back during the time period pertinent to this decision (Exhibits 1F, 3F). Since her alleged disability onset date, the claimant's treatment has been routine, conservative, and sporadic. Physical examinations do not reveal significant limitations in her physical condition, mobility, or range-of-motion. A State agency consultative examination performed in October 2006 was relatively unremarkable. The claimant complained of back pain, but she was noted to be able to get on and off the examination table, lie down and sit back up, and take her shoes on and off without assistance. Her gait was described as "grossly normal" and her finger to nose maneuver, heel-knee maneuver, and Romberg tests were unremarkable. The claimant had normal dexterity and grip and pinch strength. After this thorough examination, it was suggested that the claimant could lift up to 20 pounds in a work setting. I have further reduced the claimant to sedentary exertion to fully accommodate all possible limitations. The examiner also suggested that the claimant's postural activities be limited to no more than occasional, and the RFC adopted here is consistent with this suggestion (Exhibit 5F).

The record contains two examinations by the claimant's treating physician from 2007, but these treatment notes do not support a more restrictive determination. The examination from May 2007 noted the claimant's chronic low back problem, but, as for the claimant's complaint of pain shooting into her right leg and into her right foot, the record indicates this only occurs "every few weeks." In addition, it was noted that the claimant's pain was generally controlled by over-the-counter medication, and the claimant was noted to have normal movement in all her extremities and a normal gait (Exhibit 9F/2-4). Her examination in July 2007 was relatively similar to that from May. It was noted that the claimant had started taking Feldene for her pain, but the record shows this resulted in "good pain relief" (Exhibit 9F/5-6). The claimant complained of severe symptoms of grogginess and decreased concentration with her medication, but I find no reference to any significant issue relating to her mental functioning. Indeed, the only reference to potential side-effects from medication is during her July 2007 examination where it was noted that she was having some loose stool at that time. However, I find no reference to significant side-effects from medication either prior to or after this appointment which would support a more restrictive finding. I cannot find the

> claimant's statements concerning extreme limitations credible without some corroboration in her medical record.
>
> Treatment records from 2008 continue to remain relatively unremarkable, and they do not reasonably support a more restrictive determination. In January 2008, the claimant was treated for an acute exacerbation of her sciatica, and she was prescribed Celebrex, Neurontin, and Lortab (Exhibit 12F/1). However, by March 2008, the claimant was described as "doing fairly well." It was noted that she had tried doing some yard work with a rake, but that this exacerbated her back pain. The claimant was offered refills on her pain medication, but she indicated that she did not use her Lortab that often and, since she still had medication left, she did not need a refill on it (Exhibit 12F/2). I find the claimant's back pain exacerbation while doing yard work entirely consistent with this decision because that type of work would have required an exertional level and postural movements beyond that which is determined here. Likewise, I find the statements concerning the claimant's limited use of her pain medication consistent with a finding that her limitations do not occur with a frequency or intensity which would preclude regular and continuous work at a sedentary exertion. It is also noted, that the record contains no reference to any significant side-effects from her medication, as discussed above. Although there is no persuasive support that the claimant's medication causes grogginess, the record shows she does, at least occasionally, take prescribed medication for her pain, so I find it reasonable to limit her to no more than unskilled work (20 CFR 404.1568(a) and 416.1568(a)) to accommodate any issue with grogginess. I cannot find that it limits her further than this or otherwise precludes all work without some corroboration of such limitations in her medical treatment records.

(R. 14-16).

Finally, the ALJ concluded that while Gulledge's "treatment records reasonably establish that she had degenerative disc disease and that it causes her pain, . . . the routine and conservative nature of her treatment and her statements during those appointments do not support a finding that her limitations occur with a frequency or intensity which would preclude all work." (R. 16).

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate *reasons* for doing so, or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "'the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'" *Foote*, 67 F.3d at 1562, *quoting Tieniber*, 720 F.2d at 1255 (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court). The ALJ has discretion to discredit a plaintiff's subjective complaints as long as he provides "explicit and adequate reasons for his decision." *Holt,* 921 F.2d at 1223. Relying on the treatment records and objective evidence, the ALJ concluded that the plaintiff's underlying conditions are capable of giving rise to some pain and other limitations, but not to the extent described by the plaintiff. Consequently, he discredited the plaintiff's testimony that she suffers from disabling, intractable pain. After a careful review of the record, the court concludes that the ALJ's reasons for discrediting the plaintiff's testimony were clearly articulated and supported by substantial evidence.[5]

The medical records support the ALJ's conclusion that while Gulledge has conditions that could reasonably be expected to produce pain, Gulledge was not entirely credible in her

---

[5] Indeed, the ALJ in this case was remarkably thorough in his analysis, a thoroughness which the court very much appreciates.

description of that pain. For example, Gulledge testified that although she experiences pain daily, she has not sought treatment from a specialist in several years. (R. 44). She testified that she takes Celebrex, Neurontin and Flexeril for the pain. (R. 45). However, in October 2006, she told the consultative examiner that she took over-the-counter ibuprofen for pain. (R. 350). At that time, she could get on and off the examination table without assistance, and did not need an assistive device for ambulation. (R. 351). X-rays also indicated that Gulledge's alignment was within normal limits and there was no evidence that her dorsal fixation was loosening. (R. 348).

Further, a May 14, 2007 treatment note indicates that Gulledge controlled her back pain with over-the-counter Tylenol, Advil and Excedrin. (R. 370, 372). A July 9, 2007 treatment note indicated that Gulledge was receiving good pain relief from NSAIDS medication. (R. 381-84). She did not seek further medical treatment until January 2, 2008. At that time, she was diagnosed with an acute exacerbation and prescribed Celebrex, Neurontin and Lortab. (R. 391). In March 2008, Dr. Moreno's treatment note indicates that Gulledge was "[d]oing fairly well but has been racking (sic) the yard past few days and has exacerbation of pain on lower back." (R. 392). At that time, Gulledge did not need a refill of the Lortab prescription because she had not used the last prescription and she said she did not use it very often. (*Id*.) Gulledge's medical records militates against her credibility. Thus, the court concludes that the Commissioner's decision to discredit Gulledge's testimony is supported by substantial evidence.

To the extent that the plaintiff is arguing that the ALJ should have accepted her testimony regarding her pain, as the court explained, the ALJ had good cause to discount her testimony. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled. Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

A separate order will be entered.

Done this 17th day of December 2010.

                                                /s/Charles S. Coody
                                        CHARLES S. COODY
                                        UNITED STATES MAGISTRATE JUDGE